United States District Court
Southern District of Texas
**ENTERED**
July 21, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEFFREY A. HANCE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:16-cv-02636 |
| | § | |
| NANCY A. BERRYHILL, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENTS AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge[1] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No.11), Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No.14), Defendant's Cross-Motion for Summary Judgment (Document No.13) and Brief in Support (Document No.14) and Plaintiff's Response to Defendant's Motion for Summary Judgment (Document No.15). After considering the cross- motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set for below that the Defendant's motion for Summary Judgment (Document No.13) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No.11) is DENIED, and the decision of the Commissioner is AFFIRMED.

---

[1]The parties consented to proceed before the undersigned Magistrate Judge on December 9, 2016. (Document No. 7).

## I.      Introduction

Plaintiff, Jeffery A. Hance ("Hance") brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB"). Hance argues that the Administrative Law Judge ("ALJ"), Susan J. Soddy, committed errors of law when she found Hance was not disabled. Hance argues the ALJ erred at step five. According to Hance, because of his use of a cane, there is a discrepancy between the vocational expert's testimony and the hand use requirements of the jobs identified. Hance seeks an order reversing the ALJ's decision, remanding his claim for further consideration. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Hance was not disabled, that decision comports with applicable law and that decision should be affirmed.

## II.     Administrative Proceedings

On June 13, 2013, Hance filed for disability insurance benefits ("DIB") claiming he has been disabled since September 30, 2010.[2] The Commissioner denied his application at the initial and reconsideration stages. Hance then requested a hearing before an ALJ. The SSA granted his request and the ALJ held a hearing on September 10, 2014. On April 1, 2015, the ALJ issued her decision finding Hance not disabled. Hance sought review by the Appeals Council of the ALJ's adverse decision. The Appeals Council shall

---

[2] Hance amended his alleged disability onset date to August 4, 2012, at the September 10, 2014, hearing.

grant a request to review the decision of an ALJ if any of the following circumstances exist: 1) it appears that the ALJ abused her discretion; 2) the ALJ made an error of law in reaching her conclusion; 3) the ALJ's action are not supported by substantial evidence; 4) a broad policy issue affects the public interest 5) there is new and material evidence and the decision is contrary to the weight of all record evidence. After considering Hance's contentions in light of the applicable regulations and evidence, the Appeals Council, on July 8, 2016, determined no basis existed upon which to grant Hance's request for review. Thus the ALJ's findings became final.

Hance timely filed his appeal of the ALJ's decision. The Commissioner has filed a Cross-Motion for Summary Judgment (Document No.13). Likewise, Hance has filed a Motion for Summary Judgment (Document No.11). This appeal is now ripe for ruling. The evidence is set forth in the transcript. There is no dispute as to the facts therein.

## III.    Standard of Review of Agency Decision

The court, in its review of a denial of disability benefits, is only to determine 1) whether substantial evidence supports the Commissioner's decision, and 2) whether the Commissioner's decision comports with relevant legal standards. *Jones v. Apfel,* 174 F.3d 692, 693 (5th Cir. 1999). Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing"

when not supported by substantial evidence. *Id.* While it is the duty of the court to examine the record in its entirety to decide whether the decision is supported by substantial evidence, *Simmons v Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence prevails against the Commissioner's decision. *Chaparo v Bown*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones* at 693. Conflicts in the evidence are to be resolved by the Commissioner. *Anthony v Sullivan,* 954 F.2d 289,295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence" to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must establish more than a "suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)(quoting *Hemphill v. Weinberger*, 483 F.2d 1127 (5th Cir. 1973)).

## IV.   Burden of Proof

An individual who claims entitlement to disability insurance benefits under the Act has the burden to prove his disability. *Johnson v. Bowen*, 864 F.2d 340,344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. *Id.* §423(d)(3). The impairment must be so severe as to limit the claimant in the following manner

> [H]e is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [he] lives, or whether a specific job vacancy exists for [him], or whether [he] would be hired if [he] applied for work.

*Id.* §423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan,* 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;
2. If the claimant does not have a "severe" impairment or combination of impairments, she will not be found disabled;
3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

> 5. If the claimant's impairment prevents him from doing any other substantial
> gainful activity, taking into consideration his age, education, past work
> experience, and residual functional capacity, he will be found disabled.

*Id.*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995);

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant

bears the burden of proof on the first four steps of the analysis to establish that a

disability exists. If successful, the burden shifts to the Commissioner, at step five, to

show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154

(5th Cir. 1999).  Once the Commissioner demonstrates that other jobs are available, the

burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d

614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that

the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

In the instant action, the ALJ determined, in her April 1, 2015 decision, that Hance

was not disabled at step five. In particular, the ALJ determined that Hance had not

engaged in substantial gainful activity since August 4, 2012 (step one); that Hance's

obesity, status post remote left leg fracture, traumatic arthritis of the knees, and mood

disorder were severe impairments (step two); that Hance did not have an impairment or

combination of impairments that meets or medically equals the severity of one of the

listed impairments in Appendix 1 of the regulations (step three); that Hance had the RFC

to perform a limited range of light work. In particular:

> [T]he claimant has the residual functional capacity to perform light
> work. . . except he cannot climb ropes, ladders, or scaffolds. He cannot
> kneel or crawl. He is limited to simple, routine tasks that require no more

than occasional interaction with the public. The claimant requires a cane for ambulation (Tr. 185).

The ALJ further found that Hance has no past relevant work (step four); and that based on Hance's RFC, age, limited education, no past relevant work experience, and the testimony from the vocational expert, that Hance could perform work as a production assembler, a shipping and receiving weigher, a checker I or a warehouse checker, and that Hance was not disabled within the meaning of the Act (step five). As a result, the Court must determine whether substantial evidence supports the ALJ's step five finding.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

## V. Discussion

### A. Objective Medical Evidence

The first element considered is the objective medical evidence. The objective medical evidence shows that Hance has been treated for hypertension, diabetes mellitus, status post remote left leg fracture, traumatic arthritis of the knees and mood disorder. He is obese. The medical records from the relevant period, August 4, 2012, through April 1,

2015, show that Hance received medical care at the Veterans Administration Medical Center in Katy, Texas.[3]

At his outpatient visit on January 28, 2013, Hance was fitted for and prescribed braces for both knees. His hypertension was uncontrolled at this appointment due to noncompliance with medication. No fracture or dislocation was reported. His plate and screws were intact. (Tr. 1778). On January 27, 2013, Hance went to the emergency room complaining of knee pain. (Tr. 1776, 671). An examination of the knee revealed minimal joint space narrowing of the right medial compartment and moderate joint space narrowing of the left medial compartment. No fracture or dislocation was noted. He had small suprapatellar joint effusion present. The later plate and screw fixation of the distal left femur appeared intact. Based on the above findings, the radiologist opined that Hance had mild right and moderate left osteoarthrosis of the medial compartment and small right knee joint effusion. (Tr. 1778, 672).

---

[3] The records show that Hance has been treated at the Veteran's Administration Medical Center since 2010. On September 9, 2010, at Hance's primary care visit his BMI was measured at 35 and he tested positive for depression. (Tr. 819-826). On October 14, 2010, he underwent a procedure to repair a fracture to his left leg. On May 24, 2011, Hance underwent surgery to repair a supraumbilical hernia. (Tr. 790). On January 10, 2012, Hance was seen for a post orthopedic surgery follow up visit where the factures in the third and fourth metacarpal bones were healing. His finger flexion was 4/5 and his finger abduction was 3/5. (Tr. 1820, 717). On February 22, 2012 Hance was seen for a primary care follow up seeking treatment for pain in left leg and ankle. His PTSD screening was negative. (Tr. 450). An examination of left leg and ankle revealed no edema. (Tr.1815). At Hance's mental health appointment July 3, 2012, he reported improved mood following a trip to Las Vegas. Hance failed to show for his mental health appointment on August 14, 2012. At his mental health appointment on June 21, 2012, Hance reported an increase in activity since his last visit because of involvement with World Finance Group (WFG). (Tr. 681-683, 1789). At his mental health appointment on April 9, 2012, Hance denied any cognitive symptoms including forgetfulness, losing track of time, getting lost and difficulty managing money. (Tr. 703). The psychiatrist encouraged Hance to walk 1-2 times a day to deal with obesity and chronic pain. (Tr. 633).

On September 12, 2013, Hance had a consultative examination where he complained of leg and knee pain. His gait was normal and there were no signs of clubbing, edema or inflammation. Hance had a normal range of motion except for his left knee. (Tr. 876). An MRI of the left knee revealed suprapatellar joint effusion. No acute fracture was noted. (Tr. 878). The radiologist opined that Hance has suprapatellar joint effusion but without acute bony abnormality in the left knee. (Tr. 873-879). At his mental health appointment on October 29, 2013, Hance reported that problems with memory prevented him from taking his meds. (Tr. 917). At this appointment, he ambulated independently and did not bring a cane. At his visit to the VA Center on January 28, 2013, Hance reported knee pain from exercising. He denied radiation of pain and numbness or tingling or lower back pain. He ambulated without a cane. His coordination, dexterity, motion of hands and fingers, grip strength and ability to reach, handle finger and feel were normal. (Tr.875). At his orthopedic surgery examination and consult on December 20, 2013, Hance was diagnosed with mild degenerative arthritis of his left knee. (Tr. 2030 – 2073).

When seen by an orthopedist on January 15, 2014, Hance reported pain of only 1/10. The orthopedist opined that Hance has radiculopathy to his right foot, pain in his left knee and ankle, and decreased range of motion in left knee. He further opined that Hance had a "fair" rehab potential. (Tr. 1595). At his mental health appointment on January 29, 2014, Hance reported feeling irritable and unable to sleep. (Tr. 2019). Hance's medications were adjusted and he was prescribed Ambien. (Tr. 2019). Hance reported for a primary care follow up on February 13, 2014, for chronic pain in knees and back. He refused an injection for pain. He was instructed to lose weight and exercise. At his mental health

visit on March 26, 2014, his medications were adjusted and a new medication,
Mirtazapine, for mood irritability and anxiety was added. (Tr. 2006).

Hance presented for his follow-up mental health appointment on July 25, 2014, with
his grandson. (Tr. 1996). Hance complained of insomnia and increased irritability. It was
recommended that he increase his Mirtazapine to 45mg at bedtime and to restart
Hydroxyzine for anxiety. Hance agreed to these recommendations. At this visit his BMI
measured 40. (Tr. 397) At his follow up mental health appointment on May 9, 2014,
Hance stated that he is less irritable. (Tr. 2004). His BMI was 38. Hance was counseled
on the benefits of weight control and encouraged to participate in the "MOVE!" program.
(Tr. 1670– 1710).

On April 8, 2015, Hance went to a follow up mental health appointment. He reported
feeling unmotivated. He stated he did not take Prazosin because he did not receive it in
the mail. (Tr.83). He was instructed to restart Prazosin and continue with the other
prescribed medications. At his April 24, 2015, mental health visit, Hance reported an
inability to sleep and feelings of anxiety, depression and irritability. (Tr. 80). At his
follow-up appointment on July 1, 2015, he reported fewer nightmares. He is also
complained about being "tired of waiting." Hance's psychiatrist increased his dose of
Prazosin to 2mg at bedtime. (Tr. 65-72). At Hance's primary care follow up appointment
on July 31, 2015, he had a BMI of 41. He was counselled about nutrition and weight
management. (Tr. 60-63). On September 20, 2015, Hance picked up his knee braces. (Tr.
43) Hance was seen for a mental health appointment on November 17, 2015. He reported

irritability, nightmares and hypervigilance. On November 10, 2015, Hance had a GAF score of 55. He was diagnosed with PTSD and depression. (Tr. 21-24).

A disability determination unit physician, Nancy Childs M.D., completed a RFC assessment October 3, 2013. Based on her review of the objective medical evidence, Dr. Childs opined that Hance could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour work- day and unlimited push/pull. As for postural limitations, Dr. Childs further opined that Hance could occasionally climb ramps/stairs, occasionally climb ladders/ropes/scaffolds. He could occasionally balance, stoop, kneel, crouch, and crawl. Dr. Childs found that Hance has no manipulative, visual, communicative, or environmental limitations. (Tr. 197-198).

A second disability determination unit physician, Yvonne Post D.O., reviewed Hance's records and reached a slightly different RFC. Dr. Post opined that Hance could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour work day. He was unlimited in his ability to push and/or pull. As for postural limitation, Dr. Post opined that Hance could occasionally climb ramps/stairs and never climb ladders/ropes/scaffolds. He could occasionally balance, stoop, kneel, crouch, and crawl. Dr. Post found that Hance has no manipulative, visual, communicative, or environmental limitations. (Tr. 212-213).

Here, substantial evidence supports the ALJ's finding that Hance's obesity, status post remote left leg fracture, traumatic arthritis of the knees, and mood disorder were severe impairments at step two, and that such impairments at step three, individually or in

11

combination, did not meet or equal a listed impairment. Substantial evidence supports this determination.

RFC is what an individual can still do despite his limitations. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. SSR 96-8P, 1996 WL 374184, at *2 (SSA July 2, 1996). The responsibility for determining a claimant's RFC is with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ is not required to incorporate limitations into the RFC that she did not find to be supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

Upon the record, the ALJ's discussion of the record shows that the ALJ carefully considered all of the medical evidence in formulating an RFC that addressed Hance's physical impairments, including his need for a cane in ambulation. The ALJ, based on the totality of the evidence, concluded that Hance would perform light work restricted to the extent that he never be required to climb ropes, ladders, or scaffolds, or kneel or crawl. He is limited to simple, routine tasks that require no more than occasional interaction with the public. The limitations take into account his obesity, status post remote left leg fracture, traumatic arthritis of the knees, mood disorder, and requirement of a cane for ambulation, that the ALJ found supported by the record as a whole. The ALJ gave specific reasons in support of this determination. This factor weighs in favor of the ALJ's decision.

12

**B. Diagnosis and Expert Opinion**

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. The law is clear that "a treating physician's opinion on the nature and severity of a claimant's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with. . .other substantial evidence." *Newton*, 209 F.3d. at 455. The ALJ may give little or no weight to a treating source's opinion, however, if good cause is shown. *Id.* at 455-56. The Fifth Circuit in *Newton* described good cause as, where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Id.* at 456. "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performed a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. §404.1527(d)(2); *Newton*, 209 F.3d at 456. An ALJ does not have to consider the six factors "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," and where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *Alejandro v. Barnhart*, 291 F.Supp.2d 497, 507-11 (S.D.Tex. 2003). Further, regardless of the opinions and diagnosis of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*,

64 F.3d at 176. "The ALJ's decisions must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Id*. at 455; *see also Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so."). However, perfection in administrative proceedings is not required. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

With respect to the opinions and diagnoses of treating physicians and medical sources, the ALJ wrote:

> On September 30, 2010, the claimant was involved in a work-related injury. He sustained a fracture to his left leg. He underwent an open reduction and internal fixation performed by Dr. Juan Bustos on October 14, 2010 (Exhibit B-1F/202). The claimant subsequently underwent physical therapy until March 2011 (Exhibit B-1F).

> In follow up visit dated May 11, 201,1 the claimant reported that his doctor released him back to work (B-1F/192). This was more than a year prior to the current alleged onset date. When seen again in August 2011, the claimant reported doing well (Exhibit B-1F/113). The claimant's comments to his doctor clearly indicate an improvement in the claimant's medical condition.

> Progress notes from Veteran's Administration Medical Center dated February 2012 indicate that the claimant sought follow up treatment for pain involving his left leg and ankle (Exhibit B-1F/89). However, there was no edema noted in his extremities (Exhibit B-1F/85). In April 2012, the claimant's weight was recorded at 280.9 pounds with a Body Mass Index (BMI) of 39 (Exhibit B-1F/16). The claimant was encouraged to walk 1 to 2 times a day (Exhibit B-1F/17).

> In January 2013, the claimant sought follow up treatment for bilateral knee pain (Exhibit B-2F/52). An x-ray of the right knee revealed mild right and moderate left osteoarthrosis of the medial compartment and small right knee joint effusion. The hardware appeared intact (B-1F/45). 50mg of Naproxen was prescribed (Exhibit B-1F/46). Mr Hance was fitted for two knee braces (B-1F/35).

Dr. Hugo M. Truo conducted a consultative examination in September 2013, which confirmed the diagnosis of leg and knee pain. The claimant's gait was normal despite the fact that he brought a cane to the evaluation. There were no signs of clubbing, edema or inflammation involving his extremities. Ranges of motion of the extremities were normal except for the left knee that showed effusion, tenderness and limited range of motion to 70 degrees. X-ray of the left knee revealed suprapatellar joint effusion but without acute bony abnormality or fracture (B-3f/7). At that time, the claimant's height was measured at 70 inches and his weight recorded at 280 pounds, indicating obesity with a BMI of 41(B-3F).

At a follow up visit in November 2013, it was noted that the claimant's diet regimen remained an issue, as his weight was recorded at 280.9 pounds with a BMI of 39 (Exhibit B-8F/111) despite having been instructed by his doctor to exercise and lose weight (Exhibit B-8F/42). In February 2014, the claimant sought treatment for chronic pain involving his knees. The claimant was offered a steroid injection but refused (Exhibit B-8F/41-42) the undersigned may consider non-compliance with doctor recommendations and protocol when assessing the claimant's impairments and disability.

When seen again in March 2014, the claimant reported experiencing only moderate pain involving his knees bilaterally. The claimant also reported that he has used his TENS unit and has been compliant with his home exercise program (HEP) and agreed to be discharged from physical therapy (Exhibit B-8F/36).

In addition to his physical problems, the claimant alleges disability due to psychological based symptoms. The medical record documents that a mental status examination dated April 2012, and administered by Veteran's Administration Medical Center indicates that the claimant's mood was depressed. His affect was irritable. His insight and judgment were fair. The claimant denied having any suicidal/homicidal ideations, hallucinations or illusions. This thought process was goal directed (Exhibit B-1F/16-17). The claimant also denied having received any inpatient psychiatric treatment (Exhibit B-1F/14). The claimant reported currently taking a low dose of Zoloft and he is agreeable to an increase dose. The diagnosis was depression (Exhibit B-1F/17).

A subsequent mental status examination dated May 2012, administered by Veteran's Administration Medical Center indicates that the claimant's mood was dysphoric. His affect was blunt and mood congruent. Insight and judgment were fair. The claimant was well groomed with good hygiene. The diagnosis was depressive disorder due to medical condition with a current. The claimant's past year global assessment of functioning (GAF) was rated at 55 (Exhibit B-

2F/75). According to the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION, a GAF of 51-60 indicates moderate impairment in social, occupation, or school functioning.

A progress note from Veteran's Administration Medical Center dated July 3, 2012 indicates that the claimant reported tolerating the increase dose of his medications made at the time of the last visit. Specifically, he reported feeling less depressed and less irritable. He has also been sleeping better with an increase dose of Trazodone. The claimant also reported having just returned form his Las Vegas trip (Exhibit B-2F/6). The claimant's comments to his doctor clearly indicate an improvement in the claimant's medical condition.

A mental health note from Veteran's Administration Medical Center dated August 14, 2012 indicates that the claimant failed to keep his scheduled clinical appointment (Exhibit B-1F/48). In January 2013, the claimant refused follow up mental health treatment (Exhibit B-1F/38). The undersigned may consider non-compliance with doctor recommendations and protocol when assessing the claimant's impairments and disability.

Andrea Pellegrini, Ph.D., conducted a consultative psychological evaluation in September 2013 (Exhibit B-4F). Mr. Hance reported that he drove himself to the evaluation. He reported depression and memory loss. Associated symptoms included poor motivation, loss of interest, sleep disturbance, fatigue, irritability, social isolation, lack of focus, forgetfulness, restlessness, often distracted or preoccupied, and feelings of helplessness. With regard to the mental status examination, the claimant's mood appeared depressed. His affect was congruent to his mood. His insight appeared limited but his judgment was adequate. He was casually dressed and clean. There was no evidence of loose associations, flight of ideas or tangential or circumstantial thinking noted in his thought process. Mr. Hance also demonstrated goal directed and logical thinking. His sensorium and cognition appeared clear and intact. He appeared to be preoccupied with physical difficulties and pain related issues. He was oriented to time, place, person, and situation. Memory to immediate functions appeared intact with weaker shorter-term recent memory functions noted as he was able to recall three out of three objects immediately and recall only one out of three objects after a five minute delay. Long-term memory also appeared intact, as he was able to provide some details about his personal history (B-4F).

\*                                \*                                \*

As for the opinion evidence, the undersigned concurs with the October 2013 opinion of Dr. Nancy Childs, the State agency medical consultant who opined that the claimant has the residual function capacity to perform light work with some postural limitations (Exhibit B-1A). The undersigned also considered the

November 2013 opinion of Dr. Yvonne Post at Exhibit B-3A affirmed the assessment of Dr. Nancy Childs at Exhibit B-1A. The residual functional capacity conclusions reached by the State Agency reviewing physicians also support a finding of "not disabled." Although the physicians are non-examining or treating physicians, they do deserve some weight particularly in a case like this in which there exist a number of reasons to reach similar conclusions, as discussed in this decision.

The undersigned also considered the October 2013 opinion of Janice Ritch, Ph.D., a State agency medical consultant who completed a Psychiatric Review Technique Form and mental residual functional capacity assessment opining that the claimant has an affective disorder and non-exertional limitations, but which do not render him totally disabled (Exhibit B-1A). The medical consultant at Exhibit B-3A, who affirmed the assessment of Dr. Ritch at Exhibit B-1A. The undersigned finds that the opinions of Dr. Ritch and Dr. Marler are consistent with the entire record and therefore has afforded great weigh to these opinions (Tr. 106).

Here, the thoroughness of the ALJ's decision shows that she carefully considered the medical records and testimony, and that her determination reflects those findings accurately. The ALJ summarized the evidence and set forth specific reasons concerning the weight given to the opinions of the medical sources. The Court concludes that the diagnosis and expert opinion factor also supports the ALJ's decision.

### C. Subjective Evidence

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. §423. The regulations provide a two-step process to evaluate a

17

claimant's alleged symptoms. *See* 20 C.F.R. §§404.1529, 416.929. First, the ALJ must consider whether there is an underlying, medically determinable impairment that could reasonably be expected to produce the individual's symptoms, such as pain. 20 C.F.R. §§404.1529, 416.929. Second, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work related activities. *Id.*

A claimant's testimony must be consistent with the objective medical evidence. 20 C.F.R §§404.1529(a), 416.929(a). "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Farrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the claimant. *Hames*, 707 F.2d at 166. Thus the ALJ's evaluation of the claimant's subjective complaints is entitled to deference if supported by substantial evidence. *See Newton*, 209 F.3d at 459.

In connection with his DIB application, Hance completed a Function Report on August 7, 2013. (Tr. 313-321). Hance described his impairments as follows: "I have permanent restrictions. I cannot lift more than 20 pounds, kneel, squat, crouch or bend at the knees. I'm not to push or pull anything with a force of 20 pounds or more. I can't

18

stand or sit more than 2 hours at a time. No climbing ladders. Can't remember instructions. Memory loss." Hance described a typical day as watching TV, eating, trying to clean house and taking care of his grandson. (Tr. 313). The types of meals prepared by Hance include sandwiches and cereal. (Tr. 316). Hance goes outside daily to check the mail. (Tr. 317). Hance stated that he can walk, drive a car, shop in stores, pay bills, handle a savings account, count change and use a checkbook/money orders. (Tr. 317). Hance's hobbies include watching TV, playing sports, working on cars, and body building. (Tr. 318). Hance's social activities include going to the store. (Tr. 318). Hance stated that he has problems lifting, squatting, standing, walking, sitting, kneeling, stair climbing, memory, completing tasks, concentration, understanding, following instructions, using hands, getting along with others, and memory loss. (Tr. 319). He uses knee braces and a cane. (Tr. 320).

Hance completed a second function report on November 7, 2013. (Tr. 330-338). Hance wrote "I have permanent restrictions, I can't squat, kneel, walk, or stand for a long time. Not able to lift, push, or pull anything that has a weight or force of 20 lbs. My concentration is no good. Memory is bad. I can't be around a lot of people. My depression is worse. I lose my temper easy. I can't walk far a long time. I use my cane and knee braces a lot." (Tr. 331). Hance described a typical day as waking up, getting his grandson ready for school, fixing meals, sitting around and watching TV. (Tr. 332). The types of meals prepared by Hance include sandwiches, cereal, and toast. (Tr. 333). With respect to household chores, Hance stated that he does laundry and some cleaning. (Tr. 333). Hance's hobbies include watching TV,

playing sports, weight lifting, working on cars, and yardwork. (Tr. 335). Hance

stated that he has problems lifting, squatting, standing, walking, sitting, kneeling,

and climbing stairs. Hance stated that he also has trouble with memory, completing

tasks, concentration, understanding, following instructions, and getting along with

others. (Tr. 336). He wrote that he uses a cane and knee braces most of the time.

(Tr. 337).

Hance testified at the September 10, 2014 hearing. Hance testified that he

uses a cane all the time. (Tr. 176). Hance stated that he last attempted to work in

May of 2013 as a receiver of packages. (Tr. 172). This attempt lasted four weeks.

(Tr. 172). When questioned about his daily activities, Hance testified that he sits

around during the day and tries to do housework. (Tr. 183). He also testified that he

can sweep and mop floors but is unable to work in the yard. (Tr. 181). Hance also

testified that he has difficulty finishing these chores and it often takes him all day.

(Tr. 182).  He testified that he will play catch with his grandson while he lays on the

couch. (Tr. 183). He further testified that he can drive six to eight miles without

stopping. (Tr. 183). He does not attend church or social activities. (Tr. 183). Hance

testified that he can put his shirt on, brush his teeth, comb his hair but needs help

getting in and out of the shower. (Tr. 181). Hance also testified he can stand on a

"good day" for 30 minutes and if he "pushed it" 45 minutes. (Tr. 177). He estimated

that he can walk 100 feet without stopping. On a "bad day" he can only walk 80 feet

without stopping. (Tr. 177). He further testified that he elevates his leg at waist level

to prevent swelling. (Tr. 179). His leg is elevated ninety percent of the time. (Tr. 179).

Here, the ALJ concluded that Hance's complaints concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. The undersigned finds there is nothing in the record to suggest that the ALJ made improper credibility findings or that she weighed the testimony improperly. Accordingly, this factor also supports the ALJ's determination.

### D. Education, Work History, and Age

The final element to be weighed is the claimant's educational background, work history, and present age. A claimant will be determined to be under disability only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial, gainful work which exists in the national economy. 42 U.S.C. §423(d)(2)(A).

The record shows that the ALJ questioned a vocational expert ("VE"), at the hearing. A vocational expert is called to testify because of his familiarity with job requirements and working conditions. "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan v. Shalala,* 58 F.3d 129, 131 (5th Cir. 19950) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question

posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling*, 36 F.3d at 436. A hypothetical question is sufficient when it incorporates the impairment which the ALJ has recognized to be supported by the whole record.

Hance's sole assignment of error relates to the purported failure of the ALJ to acknowledge or reconcile conflicts with the VE's testimony describing jobs he can perform despite his RFC, with the descriptions of the jobs in the DOT. According to Hance, the DOT entries for the jobs at issue confirm that handling and fingering are "frequent" activities of these jobs. Hance suggests that when standing, he would not be able to handle and finger while holding and supporting himself with a cane. He argues that these hand limitations associated with the use of a cane preclude his being able to perform the jobs. Hance argues that by not including a hand limitation the ALJ failed to meet her burden at step five of the sequential evaluation to show that there are other jobs the Plaintiff can perform, and that the matter should be remanded.

The Commissioner counters that the ALJ's hypothetical questions determination were supported by substantial evidence. The Commissioner further argues that the ALJ specifically included the cane limitation in a separate hypothetical to the vocational expert. Even though the Commissioner contends that the ALJ did not spell out each limitation that would accompany the use of the cane, the vocational expert is an expert in her field and is familiar with the jobs and their

requirements. Finally, Commissioner argues that Plaintiff did not question the vocational expert about this alleged conflict during the hearing, despite being given the opportunity to pose hypothetical questions. The Commissioner contends that Hance fails to show that any of these jobs require the use of both hands or even that they require the use of both hands at the same time. The Magistrate Judge agrees.

The record shows that the ALJ posed several hypothetical questions to the VE incorporating Hance's RFC, which included his need for a cane. Moreover, Hance's attorney had the opportunity to present additional hypothetical questions, and to cross examine the VE about Hance's ability to perform the jobs identified. The VE, in turn, testified that Hance could perform the jobs identified and further that the jobs open to Hance were consistent with the DOT'S specifications. For example:

Q. I want you to assume an individual the same age as the claimant with the same education and work experience. He has the residual functional capacity to perform light work as defined in Social Security Administration regulations except he cannot climb, ropes, ladders, or scaffolds. He cannot kneel or crawl. He is limited to simple, routine tasks that require no more than occasional interaction with the public. Any jobs?

A. Yes, ma'am. Such a person could perform the work of a production assembler. The DOT is 706.687-010. It is light, unskilled work with an SV P of 2. There are approximately 3,100 jobs in the state of Texas and 60,000 in the national economy. Such a person could perform the work of shipping and receiving weigher. The DOT is 222.387-074. It is light, unskilled work with an SVP of 2. There are approximately 5,500 jobs in the state of Texas and 66,000 in the national economy. And such a person could perform the work of a checker I or a warehouse checker. The DOT is 222.687-010. It is light, unskilled work with an SVP of 2. There are approximately 6,000 jobs in the state of Texas and 70,000 in the national economy.

Q. If I said this person required a cane for ambulation would that change your testimony?

A. Yes. I think it would be difficult to perform these jobs with the use of a cane for ambulation.

Q. Are there other light jobs that an individual could do that needed a cane for ambulation?

A. Yes. Such a person could perform the work of an office helper. The DOT is 239.567-010. It is light, unskilled with an SVP of 2. There are approximately 5,700 jobs in the state of Texas and 85,000 in the national economy. Such a person could perform the work of an order caller. The DOT is 209.667-014. It is light, unskilled with an SVP of 2. There are approximately 3,500 jobs in the state of Texas and 40,000 in the national economy. And such a person could perform the work of a routing clerk the DOT is 222.687-022. It is light, unskilled work with an SVP of 2. There are approximately 3,000 jobs in the state of Texas and 35,000 in the national economy.

Q. Under both of the hypotheticals, the six jobs you gave me, are these exhaustive lists or representative samples?

A. It is a representative sampling of jobs.

Q. Okay. Now I want you to take the same person as in the second hypothetical and add that they are additionally limited by severe pain and other symptoms that cause periodic loss of concentration and attention to tasks; difficulties meeting attend standards; and would compromise his ability to perform work on a regular and continuing basis, as defined by the Social Security Administration regulations. Any jobs?

A. No, ma'am. (Tr. 185-187).

Hance's counsel posed the following questions to the VE:

Q. If you were to add to the judge's first hypothetical that such a person would need to have a sit-stand option and they would need to sit at least 15 minutes every hour. Also, while sitting they would need to elevate their leg to waist height. Would such a person be able to perform the jobs that you listed, first, in the first hypothetical?

A. No, not in the first.

Q. For the second hypothetical, if you added those two limitations, would such a person be able to perform the jobs that you identified?

A. The order caller and the routing clerk could still be performed in the sitting position. The office helper, I think, would be eliminated.

Q. Okay. Now that's sitting with leg elevated waist high?

A. As he's sitting today?

Q. Correct.

A. Yes

Q. Okay. Now, if a person were limited to walking and standing for hours, would such a person be able to perform the jobs that you listed in hypotheticals 1 and 2? Four hours in an eight-hour day.

A. Not in the first hypothetical. In the second hypothetical, I believe those would provide for an alternate sit-stand throughout the day. So with four hours, sitting and standing, I think those jobs would still be able to be performed. (Tr. 187-189).

The Fifth Circuit has held that "[t]he value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes, and skills need." *Fields v. Bowen,* 805 F.2d 1168, 1170, 1171 (5th Cir. 1986): *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p, 2000 WL 188704*3. Given the various hypothetical questions posed to the VE, it is reasonable to conclude, that the VE considered the DOT's requirements. The ALJ resolved any conflict between the VE's testimony and the DOT, by giving greater weight to the VE's testimony. *Carey*, 230 F.3d at 146. The VE's testimony that Hance can perform the identified jobs

25

constitutes substantial evidence supporting the Commissioner's decisions to deny benefits.

Upon this record, there is an accurate and logical connection from the record evidence to the ALJ'S conclusion that Hance was not disabled. Based on the testimony of the vocational expert and the medical records, substantial evidence supports the ALJ'S finding that Hance could perform work as an office helper, an order caller, and a routing clerk. The Court concludes that the ALJ's reliance on the vocational testimony was proper, and that the VE's testimony, along with the medical evidence, constitutes substantial evidence to support the ALJ's conclusion that Hance was not disable within the meaning of the Act and therefore was not entitled to benefits. Furthermore, it is clear from the record that the proper legal standards were used to evaluate the evidence presented. Accordingly, this factor also weighs in favor of the ALJ's decision.

Here, Hance's RFC included his need for a cane. The hypothetical presented to the vocational expert by the ALJ considered a person who required a cane for ambulation.

## V.      Conclusion

Considering the record as a whole, the Court is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration which direct a finding that Hance was not disabled within the meaning of the Act, that substantial evidence supports the ALJ's decision, and that the Commissioner's decision should be affirmed. As such, it is:

ORDERED Plaintiff's Motion for Summary Judgment (Document No.11), is DENIED, Defendant's Motion for Summary Judgment (Document No.13) is GRANTED, and the decision of the Commissioner of Social Security is AFFIRMED.

Signed at Houston, Texas, this 18th day of July, 2017

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE